UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **PLAINTIFF** |
| vs. | **CRIMINAL ACTION NO. 3:18-CR-5-CRS** |
| **DENNIS BOOKER** | **DEFENDANT** |

**MEMORANDUM OPINION**

This matter is before the Court on the *pro se* motion of the Defendant, Dennis Booker, for a modification of his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to "extraordinary and compelling reasons." DN 29. On October 12, 2020 Booker submitted a request asking Warden Gilley at the Federal Correctional Institution ("FCI") Manchester to file a motion for compassionate release on his behalf. DN 29-1. Booker's request was denied on October 20, 2020, because his "concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from [his] sentence." *Id.*

Booker, through counsel, then filed the instant motion for compassionate release. DN 29. The United States responded and objected to Booker's motion on the merits. DN 34. Booker subsequently filed a reply. DN 35. The matter is now ripe for review.

**I. BACKGROUND**

Between late 2015 and June 2017, Booker committed various acts of wire fraud and aggravated identity theft. DN 19, ¶¶ 2, 18-25. In April 2018, he pleaded guilty to six counts of wire fraud and one count of aggravated identity theft, and five additional counts were dismissed pursuant to a plea agreement. In August 2018, Booker was sentenced to 65 months imprisonment.

Booker has a lengthy criminal history dating back to March of 2000 when he was just 21. He has committed numerous crimes of fraud and theft and has a history of probation violations. Booker was on probation on two state offenses and on supervised release on a federal wire fraud and bank fraud conviction at the time he committed the offenses in this case.

Booker has now served over 75% of his sentence at FCI Manchester where, by all accounts,[1] he has had no write-ups, has held a job in the prison food service, has completed various classes and a drug treatment program, and has been timely making restitution payments. He now has less than one year remaining on his sentence.

## II. ANALYSIS

### A. Compassionate Release

In evaluating a motion for compassionate release, a district court must engage in a three-step inquiry. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021). First, a court "must find that 'extraordinary and compelling reasons warrant such a reduction.'" *Id*. (citing 18 U.S.C. § 3582(c)(1)(A)). Second, a court must "ensure that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id*. Third, a court must "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Id*.

If a defendant satisfies each of the three requirements, a district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A). Alternatively, if a district court determines that a defendant has failed to satisfy any of the three steps, it need not address the others

---

[1] The United States was ordered to provide the Court specific information with respect to Booker's adjustment to institutional life and any history of disciplinary actions, and to submit all relevant institutional and administrative records. DN 30. The United States has provided none of this information. We will therefore assume that the United States does not dispute the information relayed by defendant in his motion, despite the fact that it stands undocumented by any party in this record.

before denying the motion. *See Elias*, 984 F.3d at 519; *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1006 (6th Cir. 2020).

### 1. Exhaustion of Administrative Remedies

Prior to December 2018, motions for compassionate release could only be made by the Director of the Bureau of Prisons ("BOP"). However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Thus, if the BOP does not file for compassionate release, a prisoner must satisfy a mandatory condition to move for such relief on their own behalf. *See United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though this exhaustion requirement does not implicate our subject-matter jurisdiction, it remains a mandatory condition").

Here, Booker appears to have exhausted his administrative remedies, as he filed the present motion many months after Warden Gilley denied his request for compassionate release. The United States does not contest the documentation provided and thus concedes that this Court has jurisdiction to hear the matter. We will therefore proceed to consider the motion.

### 2. Extraordinary and Compelling Reasons

18 U.S.C. § 3582(c)(1)(A) permits a district court to reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing

Commission." 18 U.S.C. § 3582(c)(1)(A). But the statute defines the phrase "extraordinary and compelling reasons."

Congress instructed the Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [to] describe what should be considered extraordinary and compelling reasons for sentence reductions, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission released its only policy statement related to compassionate release motions in 2006 and included an application note which provided that "[a] determination made by the Director of the Bureau of Prisons that a particular case warrants a reduction for extraordinary and compelling reasons shall be considered as such for purposes of subdivision (1)(A)." U.S.S.G. § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2006). Currently, the Commentary to U.S.S.G. § 1B1.3 describes four circumstances which constitute "extraordinary and compelling reasons" for a sentence reduction:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>   (A) Medical Condition of the Defendant.—
>     (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>     (ii) The defendant is—
>     (I) suffering from a serious physical or medical condition,
>     (I) suffering from a serious functional or cognitive impairment, or
>     (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

> (B) <u>Age of the Defendant</u>.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) <u>Family Circumstances</u>.
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2018).

After Congress passed the First Step Act in December 2018, there was an open question concerning whether § 1B1.13 was applicable to compassionate release motions brought directly by inmates, as the Guidelines suggest that § 1B1.13 only applies to motions brought by the BOP. *See Ruffin,* 978 F.3d at 1006-08. The United States Court of Appeals for the Sixth Circuit resolved the issue in *Jones* by holding that "the passage of the First Step Act render[s] § 1B1.13 inapplicable to cases where an imprisoned person files a motion for compassionate release."[2] *Jones*, 980 F.3d at 1109. As a result of this finding, the Sixth Circuit announced that "district courts have full discretion . . . to determine whether an extraordinary and compelling reason justifies compassionate release." *Id*.

---

[2] Similarly, the United States Court of Appeals for the Second, Fourth, Seventh, and Tenth Circuit, along with a host of district courts, have concluded that the Sentencing Commission's existing policy statement is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants. *See e.g., United States v. Brooker*, 976 F.3d 228, 236-37 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281-84 (4th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020); *United States v. Maumau*, 993 F.3d 821, 834-37 (10th Cir. 2021).

Since *Jones*, the Sixth Circuit has reaffirmed its position that the policy statements in § 1B1.13 do not constrain district courts in considering requests properly filed by defendants for compassionate release under the First Step Act. *See e.g., Elias,* 984 F.3d at 519 ("we hold that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions"); *United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) ("§ 1B1.13 is not an applicable policy statement for defendant-filed motions for compassionate release"). Nonetheless, we note that we may turn to U.S.S.G. § 1B1.13 for "helpful guidance" in ascertaining whether extraordinary and compelling reasons exist that may warrant a sentence reduction. We acknowledge while so doing, however, that this Court is free to define "extraordinary and compelling reasons" on our own initiative. *See Elias,* 984 F.3d at 519–20 ("in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative").

Having clarified the basic analytical framework necessary for this Court to address claims for relief based upon "extraordinary and compelling reasons," we proceed to the merits of Booker's motion.

Booker argues that the prevalence of the Delta variant of the COVID-19 virus places him, a 43-year-old African-American male living in a prison setting, at risk for contracting COVID-19 a second time, and combined with evidence of his rehabilitation during incarceration, constitutes extraordinary and compelling reasons for compassionate release. DN 29.

There is no mention of any health concerns which would render him more susceptible to serious illness or death should he contract COVID-19. In fact, the United States has provided medical records under seal which do not evidence any health conditions requiring treatment. At the

time of his sentencing, Booker reported that he was in good health and required no prescription medications. DN 19, p. 22. Booker has chosen not to be vaccinated against the coronavirus.

As of this writing, the Bureau of Prisons reports that FCI Manchester has no positive cases of COVID-19 among the inmate population.[3] "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release…" *United States v. Elias*, 984 F.3d. 516, 521 (6th Cir. 2021), *citing United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Booker urges that his post-sentencing rehabilitation supports a finding that extraordinary and compelling reasons exist warranting his compassionate release. It appears that Booker has adjusted well to institutional life and has availed himself of the educational and restorative opportunities while incarcerated. He has worked and made payments toward his restitution obligations. The United States has not provided the Court with Booker's PATTERN score and Booker himself has not mentioned it.

In any event, however compelling, post-sentencing rehabilitation alone cannot form the basis for compassionate release. *See United States v. Johnson,* No. 3:02-CR-00068-TBR, 2020 WL 6121162, at *3 (W.D. Ky. Oct. 16, 2020) (citing *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *8 (W.D. Tenn. June 8, 2020) ("although rehabilitation cannot, alone, justify a reduction in sentence, it is relevant to whether a reduction is warranted").

Booker continues to press that the Delta variant is prevalent and creates great risks for his safety, yet Booker is 43 and in good health; he contracted COVID-19 in December of 2020, was asymptomatic and recovered (*See United States v. Smith*, No. 10-20388, 2021 WL 3077879, *2 (E.D.Mich. July 21, 2021)(discussing development of antibodies in recovered COVID-19 patients

---

[3] https://www.bop.gov/coronavirus/ (last visited Oct. 26, 2021).

and exposure to variant viruses)); and he was offered but declined the COVID-19 vaccine (*See United States v. Hill*, 2021 WL 1807285 at *2 (N.D.Ohio May 5, 2021)("the court agrees with other courts confronting this issue that a prisoner should not be permitted to qualify for compassionate release by declining to receive a COVID-19 vaccine"). Additionally, the circumstances of Booker's confinement and the law regarding evaluation of claims for compassionate release on grounds related to COVID-19 are continually evolving. COVID-19-based arguments seeking a finding of extraordinary and compelling reasons for compassionate release are much less compelling today than a year ago. Booker himself has no medical issues whatsoever upon which to premise such an argument and FCI Manchester presently has no inmates who have currently tested positive for the virus. The BOP reports that, to date, 112 staff and 846 inmates have been vaccinated at FCI Manchester. FCI Manchester presently houses 1, 011 inmates.  https://www.bop.gov/coronavirus (last visited Oct. 26, 2021).

### B. Conclusion

While the coronavirus is far from eradicated, many thousands of inmates have been vaccinated, 236,067 in the federal prison system at last report, and many of the federal institutions have had success in bringing outbreaks of COVID-19 infections under control. *Id.* The dire and dangerous circumstances faced by our most vulnerable populations at the height of the pandemic are, we hope, behind us.

Even so, we cannot know with certainty what COVID-19 and its variants have in store for us. However, the Court must address each inmate's situation individually and in the current context. With respect to Booker's present motion for compassionate release, we find that there is no basis for a finding of extraordinary and compelling reasons which would warrant consideration of such

relief for this defendant. Thus, his motion fails at the first step in the analysis. The Court will end its analysis here. *See Elias, supra.* at 519)(noting that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others").

For these reasons, the motion of the defendant, Dennis Booker, for compassionate release (DN 29) will be denied by separate order.

October 29, 2021

Charles R. Simpson III, Senior Judge
United States District Court

cc: Counsel of Record